[No. 15549-1-I. Division One. May 21, 1986.]

JAMES T. HOGGATT, JR., *Appellant,* v. TIMOTHY L. JORGENSEN, ET AL, *Respondents.*

*Joseph C. Calmes* and *Harrison, David & Calmes,* for appellant.

*Asa Glazer* and *Merrick, Hofstedt & Lindsey,* for respondents.

SCHOLFIELD, C.J.—James T. Hoggatt, Jr., appeals the granting of a summary judgment dismissing his claim for personal injuries. He assigns error to the trial court's ruling that a release of liability he gave defendants was binding and not voidable on the ground of mutual mistake. We affirm.

## FACTS

Hoggatt was injured on March 2, 1980, when he lost control of his motorcycle and left the roadway while he was attempting to pass an automobile driven by Timothy L. Jorgensen. There was no contact between the vehicles, and liability is disputed.

Hoggatt was hospitalized with compression fractures of his seventh and eighth thoracic vertebrae. He was diagnosed as having no spinal cord injury. Dissatisfied with that diagnosis, Hoggatt consulted other physicians in addition to his treating physician, Dr. David McPhetres.

Within a few weeks of the accident, Hoggatt contacted Jorgensen's automobile insurance carrier, Pemco, and entered into negotiations for the settlement of his claim. He was not represented by an attorney, but he had experience

as an insurance salesman, and displayed considerable knowledge of the insurance claims process. On May 13, 1980, Hoggatt presented Pemco with a demand letter detailing his damages, including property damage, pain and suffering and lost business profits as a result of his inability to work. He claimed to be in constant pain, severe enough to require medication, and that he was unable to bend over sufficiently to put on his shoes, was required to wear a back brace and had lost 1¼ inches in height. Hoggatt offered to settle the claim for the full liability insurance policy limits. Settlement negotiations between Hoggatt and representatives of Pemco took place over the next 3 days, resulting in an agreement reached on May 15, 1980. In exchange for a cash settlement of $26,500, Hoggatt executed a release of Jorgensen containing the following language:

It is understood and agreed that this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected.

Thereafter, Hoggatt continued to consult various physicians, without any change in diagnosis, until March 9, 1982, when he was examined by Dr. John Mullins, a neurologist, who diagnosed a probable mild spinal cord injury at D7 with an associated mild paraparesis. Dr. Mullins opined that the mild spinal cord injury "may well have been due to a contusion or concussion of the spinal cord at the time of his accident in March of 1980."

Hoggatt filed this lawsuit in February 1983. Jorgensen pleaded the release as an affirmative defense and moved for summary judgment. Hoggatt contended that the release was voidable due to a mutual mistake of fact, arguing that had he known the full extent of his spinal injury, he would not have settled for less than the policy limits of $100,000. Hoggatt did not allege any misconduct on the part of Pemco representatives in negotiating the settlement. The trial court granted Jorgensen's motion for summary judgment, ruling that the release was valid as a matter of law.

## MUTUAL MISTAKE OF FACT

In *Beaver v. Estate of Harris,* 67 Wn.2d 621, 409 P.2d 143 (1965), Beaver settled his personal injury claim for $1,750, believing he had only a strained back. Medical examination after the settlement indicated he had a herniated spinal disc at the time he executed a full release of liability which covered all known and unknown injuries. The sole issue was the validity of the release. Beaver contended it was voidable because of a mutual mistake of fact. The court rejected the claim of mutual mistake, saying:

There is ample authority holding a mutual mistake must be one involving both parties, a mistake independently made by each party.

In the case now being considered, the only information of plaintiff's condition was from the plaintiff himself. Defendant had no independent knowledge and he accepted plaintiff's own diagnosis and opinion of his injuries. If there was a mistake, it was a unilateral mistake, rather than a mutual mistake.

*Beaver,* at 628.

In *Chemical Bank v. WPPSS,* 102 Wn.2d 874, 691 P.2d 524 (1984), *cert. denied,* 105 S. Ct. 2140, 2154 (1985), the trial court held that the 60 defendants were not obligated under the participants' agreement because they had signed it under a mutual mistake as to the authority of the 28 Washington public utility districts and municipalities to enter into the agreement. The Supreme Court sustained mutual mistake as a defense, relying in part on Restatement (Second) of Contracts § 152(1) (1981), which states that a contract is voidable for mutual mistake:

Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.

Restatement (Second) of Contracts § 154 (1981) reads as follows:

A party bears the risk of a mistake when

(a) the risk is allocated to him by agreement of the parties, or

(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

In *Chemical Bank,* the court concluded that if anyone assumed the risk under the terms of Restatement § 154, it was the bondholders. That being the case, the 60 defendants could rely upon the mutual mistake as a defense to enforcement of the participants' agreement against them.

In *PUD 1 v. WPPSS,* 104 Wn.2d 353, 705 P.2d 1195, 713 P.2d 1109 (1985), the court again held that mutual mistake can be a defense where the parties are mistaken as to a basic assumption of the contract and the party seeking avoidance did not bear the risk of the mistake, citing Restatement (Second) of Contracts § 152 (1981). At page 362, the court stated:

It is similarly agreed that a party bears the risk of mistake when, at the time the contract is made, the party is aware of limited knowledge with respect to the facts to which the mistake relates but treats such limited knowledge as sufficient. Restatement (Second) of Contracts § 154 (1981); . . . It is said in such a situation that there is no mistake; instead, there is an awareness of uncertainty, a conscious ignorance of the future. 3 A. Corbin, *Contracts* § 598 (1960).

■ The court's discussion of mutual mistake in *PUD 1* and *Chemical Bank* makes it clear that Hoggatt cannot rely upon mutual mistake of fact to avoid the consequences of the release of liability he signed on May 15, 1980. The trial court was correct in ruling, as a matter of law, that he bore the risk of any mistake involving the nature and extent of his injuries when he signed the release. He knew that he was not fully recovered. He knew that he was in pain, needed a back brace, and that his physical mobility was

seriously impaired.

The comments of the court in *Beaver v. Estate of Harris, supra,* at 629 are appropriate:

In negotiating and settling cases, many matters must be taken into consideration. There are, in all settlements, certain elements of chance and it is common knowledge that few diagnoses and prognoses concerning injuries to the human body can be reduced to mathematical certainty. Here, the plaintiff knew at the time he settled his claim and signed the release his doctor had not discharged him to return to work. He knew he was making a final and complete settlement.

Hoggatt was in much the same position as Beaver. Despite the uncertainty, he signed a release which was a final release of injuries "known or unknown, suspected or unsuspected". His claim of mutual mistake of fact must be rejected.[1]

Judgment affirmed.

COLEMAN and GROSSE, JJ., concur.

Review granted by Supreme Court July 8, 1986.

---

[1]We are aware of the recent case from this division, *Bennett v. Shinoda Floral, Inc.,* 43 Wn. App. 504, 717 P.2d 1379 (1986). We prefer the line of reasoning we employ here to that employed in *Bennett.*