**BOLLÉ, INC., The Bonneau Company, and Foster Grant Group, L.P., Appellants,**

v.

**AMERICAN GREETINGS CORPORATION, Magnivision, Inc., and Erwin Weiss, Appellees.**

**No. 05–02–01237–CV.**

Court of Appeals of Texas, Dallas.

July 2, 2003.

Mary L. O'Connor, Michael Lowenberg, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Dallas, for appellants.

George Walter Bramblett, Jr., Nina Cortell, Haynes & Boone, LLP, Dallas, for appellees.

Before Justices WRIGHT, FITZGERALD, and LANG.

## OPINION

Opinion by Justice FITZGERALD.

This is a declaratory judgment suit concerning the effect of a settlement agreement in one lawsuit upon three unrelated pending suits involving some of the same parties. The trial judge determined the broad language of the release in the parties' settlement agreement did operate to resolve the other three lawsuits. However, the judge also concluded the resolution of these other three suits was the result of a mutual mistake, and he rescinded the settlement agreement. We affirm the trial judge's judgment.

## BACKGROUND

The events surrounding this lawsuit involve a number of corporate entities. Appellants herein are Bollé, Inc. ("Bollé"), The Bonneau Company ("Bonneau"), and Foster Grant Group, L.P. ("Foster Grant"). Bollé is the successor entity to BEC Group, Inc. ("BEC"), and—during the relevant time period—Bonneau and Foster Grant were subsidiaries of BEC. Appellees include American Greetings Corporation ("American Greetings") and its subsidiary, Magnivision, Inc. ("Magnivision"). The sole individual party before this Court is appellee Erwin Weiss ("Weiss"); at the relevant time Weiss was a senior vice-president of American Greetings and chairman of the board of Magnivision.

### The Letter of Intent Suit

In 1996, American Greetings, represented by Weiss, began negotiating to purchase a portion of BEC's business holdings, including Bonneau and Foster Grant. The parties signed a letter of intent, but American Greetings eventually decided not to go forward with the acquisition. In January 1997, BEC sued American Greetings, Magnivision, and Weiss in Dallas, alleging breach of contract, tortious interference with business relations, fraud and misrepresentation, breach of the duty of good faith and fair dealing, and breach of the warranty of authority (the "Letter of Intent Suit").

In February 1999, the parties were ordered by the trial court to attend mediation. At the end of the day, a stalemate was averted when the mediator made a settlement proposal that was accepted by both sides. The parties then entered into a rule 11 agreement to settle pursuant to the mediator's proposal.

### The Settlement Agreement

The final agreement among the parties was drafted by counsel for Magnivision and was signed by Bollé as assignee of BEC,[1] American Greetings, Magnivision, and Weiss (the "Settlement Agreement"). The Settlement Agreement called for payment by American Greetings to Bollé in the amount of $877,000. It called for the dismissal of the Letter of Intent Suit within five days of its execution. And it included expansive mutual release language. For example, performance under the Settlement Agreement was said to be in settlement of "all claims against the Released Parties including *but not limited to* ... [the claims raised in the Letter of Intent Suit]." Similarly, the Settlement Agreement stated that the parties' release was from "any and all claims,. demands, rights, liabilities, and causes of action of whatsoever kind or nature, known or unknown, foreseen or unforeseen ... including (*but not limited to*) claims arising out of [the Letter of Intent Suit]." (All emphasis added.)

### The California Patent Cases

Meanwhile, in California, three suits were filed between 1991 and 1997, involving claims of patent infringement between Magnivision on the one hand, and Bonneau and Foster Grant on the other (the "California Patent Cases"). Magnivision is the successor in interest to Al–Site Corporation, which was the original owner of the patents at issue in the California Patent Cases. Two months after the Settlement Agreement was signed and the Letter of

---

1. Bollé was created as a subsidiary of BEC in mid–1997. Then in 1998, Bollé was spun off from BEC and became a separate public company. In the settlement agreement, Bollé represented and warranted that it was the assignee of BEC's claims against the parties released by the agreement.

Intent Suit was dismissed, Foster Grant took the position that the California Patent Suits should also be dismissed based upon the Settlement Agreement.

### The Declaratory Judgment Suit

In 1999, American Greetings, Magnivision, and Weiss filed this suit in Dallas.[2] They sought a declaration that the Settlement Agreement's release did not cover the California Patent Cases. They asked in the alternative that the Settlement Agreement be reformed or rescinded on the basis of mutual or unilateral mistake. Bollé, Bonneau, and Foster Grant answered and filed a counterclaim, seeking a declaratory judgment that the Settlement Agreement did release the claims asserted in the California Patent Cases.

Both parties moved for summary judgment. Appellees' motion argued the release was unambiguous and released only the claims that were—or could have been—raised in the Letter of Intent Suit; the trial court denied this motion. Appellants' partial motion argued the release was unambiguous and *did* apply to the patent cases; the court granted this motion. The court denied both motions to the extent they sought judgment on the issue of mistake, and that issue was reserved for trial.

The parties conducted discovery on the mistake issues. The court then held a two-day bench trial and later re-opened the evidence at the request of the parties. The court then ruled the California Patent Cases had been included within the release as a result of mutual mistake of fact, and it rescinded the settlement agreement. The court entered findings of fact and conclusions of law. Bollé, Bonneau, and Foster Grant appealed.

**2.** The case was transferred by agreement of the parties to the 160th Judicial District

### STANDARD OF REVIEW

We review a trial court's conclusions of law *de novo* as legal questions. *Piazza v. City of Granger,* 909 S.W.2d 529, 532 (Tex. App.-Austin 1995, no writ).

■ Challenged findings of fact entered in a case tried to a court carry the same force and dignity as a jury's verdict upon special issues. *Gregory v. Sunbelt Sav., F.S.B.,* 835 S.W.2d 155, 158 (Tex. App.-Dallas 1992, writ denied). Accordingly, we apply the same standards in reviewing the legal and factual sufficiency of the evidence supporting the trial court's challenged fact findings as we do when reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a special issue. *Zieben v. Platt,* 786 S.W.2d 797, 799 (Tex.App.-Houston [14th Dist.] 1990, no writ). When reviewing legal sufficiency points, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.,* 774 S.W.2d 666, 668 (Tex.1989). We must consider the evidence in the light most favorable to the verdict, and if there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex. 1992). When reviewing factual sufficiency points, we review all the evidence in the record, including any evidence contrary to the verdict. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). We will set aside the verdict only if the trial court's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, shocking to the conscience, or clearly demonstrating bias. *Pilkington v. Kornell,* 822 S.W.2d 223,

Court, where the letter of intent lawsuit had been pending prior to settlement.

230–31 (Tex.App.-Dallas 1991, writ denied). We will not substitute our judgment for that of the fact finder, even if we would have reached a different conclusion when reviewing the evidence. *FDIC v. F & A Equip. Leasing,* 854 S.W.2d 681, 684 (Tex. App.-Dallas 1993, no writ).

## DISCUSSION

Appellants' fundamental complaint is that the trial court erroneously rescinded the Settlement Agreement on the ground of mutual mistake. Within the ambit of this complaint, appellants challenge three of the trial court's conclusions of law, four of its findings of fact, and the absence of another finding. We discuss these challenges in the order in which they are discussed in appellants' brief.[3]

### *Mutual Mistake*

The trial court found that the parties to the mediation (1) "forgot about the California Patent Cases," (2) "failed to consider the California Patent Cases," and (3) never "thought, believed, or intended for the settlement agreement to release claims in the California Patent Cases."[4] Appellants argue at the outset that, as a matter of law, these findings cannot support the court's Conclusion of Law No. 2, which states that:

> The California Patent Cases were included in the release provisions in the settlement agreement due to mutual mistake of fact.

Under this point, appellants first argue that even if the three findings were correct—i.e., even if the mediating parties did forget and fail to consider the California Patent Cases and did not intend to settle them—there was no mistake of fact because the parties "contracted around" that possibility. Appellants argue that appellees knowingly assumed the risk of failing to consider another lawsuit when they agreed to broad release language. They cite to *de Monet v. PERA,* 877 S.W.2d 352, 359 (Tex.App.-Dallas 1994, no writ), which in turn cites the Restatement, for the proposition that a party bears a risk that is allocated to him by an agreement. However, in *de Monet,* this Court concluded that the risk at issue (in that case, the risk of faulty asbestos removal) was not specifically allocated to either party in their agreement. *Id.* at 359–60. Similarly, the Settlement Agreement does not specifically allocate the risk of forgetting about or failing to consider an unrelated lawsuit to either party in this action. Broad release language is not the same as specific allocation of a risk.

Appellants also rely upon three out-of-state cases, but none have facts that resemble the instant case. In *State Farm Fire & Casualty Co. v. Pacific Rent–All, Inc.,* 90 Hawai'i 315, 324–25, 978 P.2d 753, 762–63 (1999), one party claimed a unilateral mistake regarding what claims were being released. The court ruled he bore the risk of not being informed of the contents of his own agreement because the property damage claim—which he thought

---

**3.** Appellants list six "Issues Presented" in their brief. They catalog eight arguments in their Summary of the Argument. And the Argument portion of their brief is broken down into seven points. These three putative roadmaps to the appellants' arguments on appeal are not aligned in an identifiable way. Our analysis follows the points actually argued in the brief and organizes those points

around the conclusions of law and findings of fact they appear to challenge.

**4.** Appellants' challenge to the sufficiency of the evidence underlying these findings is discussed below. In this first set of arguments, appellants posit that—even if the trial court's findings were correct—the legal conclusion of mutual mistake was incorrect.

he was not releasing—was mentioned "more than ten times" within the agreement. In *Hoggatt v. Jorgensen*, 43 Wash. App. 782, 786–87, 719 P.2d 602, 604 (1986), the court concluded there was no mutual mistake when a personal injury plaintiff released "all unknown claims," when he knew he was not fully recovered or released to return to work. Finally, in *Boles v. Blackstock*, 484 So.2d 1077, 1082 (Ala. 1986), the court concluded that reliance on a prediction of future events—here, that a personal injury plaintiff would be "back to normal within five months"—would not support a claim for rescission based on mutual mistake, because such a mistake must deal with existing facts. None of these cases is helpful in resolving this appeal.

Appellants introduce an argument here that they reprise throughout their brief, namely that the language of the Settlement Agreement was that of a "general release," which purportedly "has a meaning in Texas as a matter of law." Appellants appear to suggest that "general release" is a term of art that will always have the same meaning and the same legal effect, regardless of the language of an agreement and the intent of the agreeing parties. We reject that suggestion. By making the argument, appellants really continue to argue the issue that was resolved by the trial court at summary judgment: whether the language of the release was broad enough to encompass the California Patent Cases. Appellants prevailed on that issue when the trial court ruled the language was broad enough to encompass the unrelated cases.[5] Nevertheless, appellants rely here on the case of *Memorial Medical Center of East Texas v. Keszler*, 943 S.W.2d 433 (Tex.1997) (per curiam),

which speaks only to the issue of releasing claims under broad language. That case was relevant at the time of the summary judgment proceeding below, but it is not relevant to the issue of mutual mistake. No defense of mutual mistake (or indeed any defensive theory of mistake) was raised in *Memorial Medical*. The case does not control appellants' assignment of error in this Court.

 Indeed, neither the language of the parties' release nor the legal effect of that language resolves the issue of mutual mistake. When a party alleges mutual mistake, the court should not interpret the language contained in the contract but should determine whether the contract itself is valid. *See Williams v. Glash*, 789 S.W.2d 261, 264–65 (Tex.1990). If the court determines a contract sets out a bargain that was never made, the contract will be invalidated. *Id.* Appellants understandably wish to avoid application of the defense of mutual mistake in this case. However, the defense is a viable and long-standing one in Texas law. *See, e.g., Moore v. Hazelwood*, 67 Tex. 624, 4 S.W. 215 (1887) (mutual mistake as to boundaries of surveys required equitable relief). To the extent appellants' argument represents an invitation for this Court to invalidate the defense entirely by arguing for the finality of settlement agreements regardless of mistake, we decline appellants' invitation. We will not enforce a bargain that was never made, regardless of the language in the contract. *See Williams*, 789 S.W.2d at 265. The issue before this Court is whether the trial court wrongly applied the doctrine of mutual mistake, not whether the trial court should have applied the doctrine at all.

---

5. Appellees have raised the summary judgment ruling as a conditional crosspoint in this appeal. We shall not reach that crosspoint unless we determine the trial court applied the doctrine of mutual mistake erroneously.

■ Appellants next argue that there could be no mistake of fact on the bases found by the trial court because the parties are "charged with the knowledge of the cases." Again, appellants have miscast the issue. There is no issue here concerning whether the parties had knowledge of the California Patent Cases; they did. The heart of the mutual mistake issue is whether the parties—by employing broad language within the settlement agreement—released the cases without intending to do so. Having knowledge that the California litigation existed, whether that knowledge is actual or imputed, does not rule out mutual mistake in the Dallas mediated settlement.

■ Finally, appellants argue that any forgetting, failing to consider, or not intending to include the California Patent Cases cannot qualify as a mutual mistake because the very acts of forgetting, failing to consider, or not intending to include those cases amounted to negligence on the part of appellees. This argument captures another of the themes running throughout appellants' brief: that there can be no mutual mistake unless appellees disprove the existence of negligence. Appellants recite a litany of circumstances (for example, the competence of appellees' counsel, and counsel's attention to detail in drafting the agreement) which purport to establish that appellees must have been negligent if they failed to consider the existence of the California Patent Cases while settling the Letter of Intent Suit. We are not persuaded by this argument. First of all, appellants identify no authority—and we have located none—that requires the party relying on the defense of mutual mistake to prove the absence of negligence. The

cases cited by appellants in this vein either deal with mistakes of law, *see Contact Prods., Inc. v. Dixico Inc.*, 672 S.W.2d 607, 609–10 (Tex.App.-Dallas 1984, no writ) (one party's mistake regarding meaning of contractual term), or with unilateral mistake. *See James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 160 Tex. 617, 335 S.W.2d 371, 372–73 (1960) (contractor's bid contained arithmetical error). Despite appellants' protests to the contrary, the mistake alleged here is one of fact. The alleged mistake did not involve the meaning or scope of any language in the release; it involved whether three lawsuits never discussed by the parties in the mediation or settlement process were intended to be released by the mediated settlement. The intent with which parties contract is an issue of fact. *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986).

We conclude appellants' arguments that the grounds found by the trial court cannot support the defense of mutual mistake as a matter of law have no merit. We reject appellants' challenge to Conclusion of Law No. 2.

*Rescission of Settlement Agreement*

■ Appellants also challenge the trial court's Conclusion of Law No. 4, which states that:

> Plaintiffs are entitled to a declaratory judgment that the scope of the release provisions in the settlement agreement, as written, results from mutual mistake of fact of the parties to the agreement, and that it should be rescinded.[6]

Appellants' challenge to the trial court's rescission conclusion re-urges appellants' argument based on appellees' purported

---

**6.** To the extent this conclusion of law also includes the court's mutual mistake determination, we treat it as having been challenged by appellants' earlier-discussed arguments.

We separate the conclusions in our analysis only for ease in discussing appellants' separate arguments against the two issues of mutual mistake and rescission.

negligence. Appellants again argue that rescission is only available when a mistake was made without negligence, and that the court's findings related to forgetting and failing to consider the California patent cases establish appellants' negligence as a matter of law. The issue of negligence is not relevant to this inquiry, whether we are focusing on mutual mistake or rescission. Appellants' argument does not establish that the trial court's remedy of rescission was erroneous. On the contrary, Texas law clearly allows rescission when a mutual mistake of fact has been made. *See, e.g., Green v. Morris,* 43 S.W.3d 604 (Tex.App.-Waco 2001, no pet.) ("Where a mutual mistake exists, the parties are entitled to rescind their contract and be restored to positions held before entering the contract."). We decide this point against appellants, and we reject their challenge to Conclusion of Law No. 4.

### Sufficiency of Evidence

In their third and fourth points, appellants aver that the evidence was legally and factually insufficient to support the trial court's three findings that the parties forgot, failed to consider, or did not intend to include the California patent suits within the release of the Letter of Intent Suit. A party seeking to avoid a contract on the grounds of mutual mistake must show (1) a mistake of fact, (2) held mutually by the parties, (3) which materially affects the agreed-upon exchange. *de Monet,* 877 S.W.2d at 357. Appellants allege there is legally and factually insufficient evidence of the first two elements of this defensive theory.

To determine whether there was indeed a mistake of fact, we look again to *Williams v. Glash,* in which the supreme court asserted that "when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided." 789

S.W.2d at 264. In that case, Ms. Williams was involved in an automobile accident. Her car was obviously damaged, but there were no observable personal injuries. Ms. Williams contacted her insurer to evaluate the damage to her car. The insurer gave her a check for the exact amount of the damage estimate to the car, and the face of the check was marked with the insurer's code for property damage. There was no discussion of any personal injuries. Nevertheless, the back of the check contained a personal injury release. Ms. Williams later was diagnosed with head and neck injuries, but both the trial court and the court of appeals determined her personal injury suit was barred by the release as a matter of law. *Id.* at 263. The supreme court concluded that the law of mutual mistake applies to releases just as it does to other contracts. *Id.* at 265. The court stressed that Ms. Williams neither discussed nor bargained for settlement of a personal injury claim and that the insurer's check was for the precise amount of the property damage to her car. Indeed, "[t]he only evidence that these parties intended to release a claim for unknown personal injuries is the language of the release itself." *Id.* at 264. The court stated that "[i]f it can be established that a release sets out a *bargain that was never made,* it will be invalidated." *Id.* at 265 (emphasis in original). In the end, the supreme court reversed the release-based summary judgment and remanded the case for trial. *Id.*

The *Williams* court stressed that we must determine whether the parties have made a mutual mistake by looking solely to objective circumstances surrounding the execution of the release, not to self-serving subjective statements of the parties. *Id.* at 264. The court cited to section 152, comment f of the Restatement and listed four possible objective circumstances that

could inform the inquiry: (1) the knowledge of the parties at the time of signing concerning the injury, (2) the amount of consideration paid, (3) the extent of negotiations and discussions as to the injuries claimed, and (4) the haste or lack thereof in obtaining the release. *Id.* The first and fourth factors are more amenable to a personal injury analysis in which the concern is whether a release extends to a later-discovered injury. There is no question in this case that the parties knew of the California Patent Cases, and there was no pressured rush to settle those claims as can happen in a personal injury case. However the second and third factors are instructive in our inquiry.

We can trace the consideration given for the settlement through the three versions of the parties' agreement to settle. When they signed the Mediator's Proposal, the parties agreed to a payment by appellees of $877,000, dismissal of the Letter of Intent Suit, and mutual releases. In their rule 11 agreement, the parties likewise agreed to the payment of $877,000, dismissal of the Letter of Intent Suit, and mutual releases. There is no realistic question about the breadth of these agreements: each was created under the style of the Letter of Intent Suit and referred solely to that action. The broad release language appeared only in the Settlement Agreement itself. However, despite that broad language, the payment remains $877,000, the Letter of Intent Suit is the only case dismissed, and the parties exchange mutual releases. In other words, despite appellants' claim that the parties intended to resolve three other lengthy and apparently contentious lawsuits, there was no additional consideration for releasing those claims. Appellants point to "non-monetary consideration" citing the mutual releases (which were an integral part of the original proposal) and to paragraph 5 in the Settlement Agreement,

which includes an indemnification by Bollé for any claims asserted by or on behalf of BEC for any conduct made the basis of the Letter of Intent Suit. But this paragraph does not include additional consideration. It is merely the representation and warranty that Bollé—the successor in interest to BEC, which was the actual plaintiff in the Letter of Intent Suit—had the authority to settle the claims on behalf of BEC and would in fact hold appellees harmless should those claims be reasserted in the future by any other corporate entity on behalf of BEC. Characterizing this indemnification as "additional consideration" is disingenuous at best. We conclude the evidence of the parties' agreements and the underlying consideration for their agreements support the trial court's findings related to a mutual mistake of fact.

The fourth *Williams* factor addresses the extent of negotiations and discussions as to the injuries or claims released. 789 S.W.2d at 264. Appellants argue here that appellees "discussed the crafting of the release extensively." But the proper inquiry for us is not the "crafting of the release," but the extent of actual negotiations and discussions concerning the California Patent Cases. The trial court made a number of findings on this subject, none of which have been challenged in this appeal. Those findings include:

23. The parties to the BEC I mediation did not mention or discuss the California Patent Cases with each other during the mediation.

24. The parties to the BEC I mediation did not mention or discuss the California Patent Cases with the mediator during the mediation.

25. The California Patent Cases were not mentioned or discussed by or among Bollé or its representatives at the mediation.

26. The California Patent Cases were not mentioned or discussed by or among the American Greetings parties or their representatives at the mediation.

31. During finalization of the settlement agreement, the parties to the BEC I mediation did not mention to each other, and did not discuss with each other, the California Patent Cases.

32. During finalization of the settlement agreement, the California Patent Cases were not mentioned or discussed by or between Bollé or its representatives.

33. During finalization of the settlement agreement, the California Patent Cases were not mentioned or discussed by or between the American Greetings parties of their representatives.

These unchallenged findings support the conclusion that both parties either forgot the California Patent Cases, did not consider the California Patent Cases, or never intended the California Patent cases to be part of the release in their Settlement Agreement.

▇ In this context, when the subject of the alleged mistake is not a late-discovered personal injury, but commercial claims in unrelated litigation, we believe another objective factor provides insight into the intent of the settling parties: the conduct of the parties to that unrelated litigation after the release is executed. When parties release claims made in pending litigation, the logical next step is to dismiss those pending claims. This is what happened to the claims in the Letter of Intent Suit immediately after the Settlement Agreement was executed. However, the claims in the California Patent Cases were not dismissed. That litigation proceeded. Indeed, there was evidence at trial that an appellate brief was filed by Bonneau and Foster Grant in the consolidated cases several weeks after the execution of the Settlement Agreement. There was also evidence that more than a month after the Settlement Agreement, the attorneys for both sides of the patent cases agreed to file a joint statement with the federal court stating that the appeal could not be settled. The parties' conduct after the purported release of the California Patent Cases is objective evidence that neither party intended to settle those cases when they settled the Letter of Intent Suit.

We conclude there is legally and factually sufficient evidence to support the trial court's findings concerning the parties' mutual mistake. The evidence establishes that there was a mistake of fact, and that both parties were mistaken at the relevant time. We reject appellants' challenge to the trial court's underlying findings.

### Significance of Third Parties

Appellants next challenge the trial court's Finding of Fact No. 19, which states:

> At mediation and during finalization of the settlement agreement, the parties to the BEC I [i.e., the Letter of Intent litigation] mediation intended only to settle claims between themselves.

Because we have concluded that the parties did not intend to release the claims in the California Patent Claims, we need not discuss whether the parties intended to release claims owned by other parties. Regardless of which parties were involved in those cases, the parties to the Letter of Intent Suit did not intend to resolve those cases through their Settlement Agreement.

▇ Appellants also argue that rescission is improper because third parties that

would be affected by such a rescission are not joined in this case. Appellants refer to "third party beneficiaries" of the Settlement Agreement, but we find absolutely no evidence in the record that would support identification of any third-party beneficiary to the Settlement Agreement. The parties to the Letter of Intent Suit are joined in this litigation, and so the trial court's judgment for rescission addresses all necessary parties.

### *Absence of Finding on Negligence*

Finally, appellants make an alternative request that the case be remanded for the entry of a "findings of fact on the parties' negligence." Appellants urge again their theory that a mistake of fact cannot be due to the negligence of the mistaken party. As we have discussed, the issue of negligence is not relevant to this inquiry. Accordingly, the trial court's refusal to make findings on the parties' negligence, if any, was not error. We deny appellants' request.

### CONCLUSION

We have decided all of appellants' arguments lack merit. Accordingly, we affirm the judgment of the trial court without reaching appellees' conditional cross-points.