

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00311-CV

_____

TEPHNEY TRAWEEK, INDIVIDUALLY AND AS NEXT FRIEND OF B.A., A MINOR, Appellant

V.

WILLIAM RAY LONG, Appellee

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. C2018478

Before Birdwell, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant Tephney Traweek appeals from the trial court's order granting summary judgment on her negligence claim arising from a car accident. Traweek and her husband had signed a release agreement, releasing "any and all claims" arising from the accident, and summary judgment was sought on this basis. But because Traweek raised a genuine issue of material fact regarding the scope of the release and regarding mutual mistake to set aside the release agreement, we reverse the trial court's summary judgment.

## I. BACKGROUND

Traweek, her minor son B.A., and her husband Timothy Shane McMurry were injured when they were in a car accident with appellee William Ray Long. Traweek, suing in her individual capacity and in her capacity as B.A.'s next friend, brought a negligence suit against Long. In her individual negligence claim, Traweek alleged that she had "sustained injuries to her hip, left arm, right hand and body generally." Long answered and raised the affirmative defense of release, relying on a release and indemnity agreement that had been signed by both Traweek and McMurry in favor of Long and his insurer over a year before. *See* Tex. R. Civ. P. 94. The agreement released "any and all claims . . . , which I/we now have or which may hereafter accrue on account of . . . the accident." According to the terms of the release agreement, the $6,500 settlement amount was to be paid to McMurry.

2

Long served requests for admissions on Traweek; however, she did not respond to the requests, and they were deemed admitted. *See* Tex. R. Civ. P. 198.1, 198.2(c). Thus, Traweek admitted that she had freely and voluntarily signed the release agreement after she had read it and after its import had been explained to her by her attorney. Traweek also admitted that she had "fully understood" the release's "terms and legal effect" and that she had been married to McMurry on the date of the accident and on the date the release was executed. *See generally* Tex. R. Civ. P. 198.3 (providing matter admitted "is conclusively established as to the party making the admission").

Long then moved for a traditional, partial summary judgment regarding Traweek's negligence claim brought in her individual capacity and relied solely on the affirmative defense of release of liability. *See* Tex. R. Civ. P. 166a(b). In support of the affirmative defense, Long attached the release agreement and the deemed admissions. The motion was set for an August 8, 2019 hearing.

In her July 31 response (the first response), Traweek relied on parol evidence to assert that the release only applied to claims arising from McMurry's injuries, not Traweek's. Traweek's parol evidence consisted of letters between Traweek's counsel and Long's insurer, which were sent after Traweek and McMurry signed the release but before Traweek filed suit, that unsuccessfully attempted to settle Traweek's individual claim. The day before the summary-judgment hearing, Long replied to Traweek's response and objected to her parol evidence because such evidence

3

impermissibly "sought to bury or change the meaning of an unambiguous agreement." The day of the hearing, Traweek filed a "Response" to Long's reply—a surresponse—asserting ambiguity and mutual mistake of fact regarding the release agreement (the second response). *See generally Surresponse*, Black's Law Dictionary (11th ed. 2019) (defining a surresponse as a "second response by someone who opposes a motion"). At the hearing, Traweek asserted that ambiguity in the release agreement and the parties' mutual mistake of fact prevented summary judgment.

After considering "the motion, the evidence presented, and the arguments of counsel," the trial court granted Long's motion, entered a take-nothing judgment on Traweek's negligence claim brought in her individual capacity, and noted that Traweek's claims brought as B.A.'s next friend would proceed to trial. The trial court did not rule on Long's objections to Traweek's parol evidence, and we cannot imply that they were ruled on based on the trial court's granting of summary judgment. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (per curiam). Traweek later filed a motion to dismiss with prejudice her claim brought as B.A.'s next friend, which the trial court granted, making the prior partial summary judgment final. *See* Tex. R. Civ. P. 162; *Newco Drilling Co. v. Weyand*, 960 S.W.2d 654, 656 (Tex. 1998) (per curiam).

## II. PROPRIETY OF SUMMARY JUDGMENT

In her appeal, Traweek argues that her proffered parol evidence raised a genuine issue of material fact that the release's scope did not unambiguously include

4

Traweek's individual negligence claim arising from her injuries and that the release must be set aside based on a mutual mistake of fact, precluding summary judgment.

## A. STANDARD OF REVIEW

We review a traditional summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). As the movant, Long carried the burden to prove that there was no genuine issue of material fact and that he was entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

Because Long moved for summary judgment on the affirmative defense of release, he typically would carry the burden to conclusively prove, through summary-judgment evidence, all elements of that defense. *See Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008) (per curiam) (op. on reh'g); *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 699 (Tex. 2000). In this case, however, Traweek does not cogently argue that Long did not meet his burden to conclusively prove his affirmative defense; rather, Traweek raises two defenses that would effectively sidestep Long's defense: ambiguity and mutual mistake of fact. Thus, while Long had the burden to conclusively establish release, which does not seem to be at issue here, Traweek had the burden to demonstrate that the release should be set aside based on an ambiguity or on mutual mistake. *Torres v. W. Cas. & Sur. Co.*, 457 S.W.2d 50, 53 (Tex. 1970); *Sweeney v. Taco Bell, Inc.*, 824 S.W.2d 289, 291 (Tex. App.—Fort Worth

5

1992, writ denied); *cf. Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 868 (Tex. App.—San Antonio 1997, no writ) (recognizing nonmovant's response to summary-judgment motion based on affirmative defense may, in turn, rely on a defense). To do so, Traweek must have produced summary-judgment evidence sufficient to raise an issue of fact on each element of her defense to avoid summary judgment. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 180 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

## B. SCOPE OF REVIEW

Long attacks the scope of our summary-judgment review, arguing that we may not consider ambiguity or mutual mistake as grounds to reverse the trial court's summary judgment. In her first response to Long's summary-judgment motion, Traweek attached parol evidence to argue that the release should be set aside based on the parties' post-release negotiations regarding her individual negligence claim. She did not expressly raise mutual mistake or ambiguity until she filed the second response on the day of the summary-judgment hearing. Long argues that because Traweek did not raise the affirmative defenses in the first response, waiting until she filed the second response less than seven days before the hearing, she may not rely on the defenses to avoid the effect of the release agreement. *See* Tex. R. Civ. P. 166a(c) ("Except on leave of court, the adverse party, *not later than seven days prior to the day of the hearing* may file and serve opposing affidavits or other written response. . . . Issues not expressly presented to the trial court by written motion, answer or other response

shall not be considered on appeal as grounds for reversal." (emphasis added)). In short, Long contends that Traweek's affirmative defenses were mentioned too late to appropriately put the issues before the trial court. *See id.*; *see, e.g.*, *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 668 (Tex. App.—Dallas 2012, pet. denied).

However, Traweek asserted in her first response that the attached parol evidence "demonstrate[d] that when [Traweek] and her husband signed the release . . . , [Traweek's] claim arising out of her injuries sustained in the motor vehicle collision in question . . . was still being negotiated between [Traweek] and [Long]." She also argued that her attached evidence of the post-release negotiations demonstrated that the claim arising from her injuries "was separate from the settlement of her husband's personal injury claim." According to Traweek in her first response, her deemed admissions were "consistent with [her] position that she signed the release . . . as a release of only her husband's and her claims arising out of her husband's injuries."

Even though Traweek did not use the term "mutual mistake" or "ambiguity" in the first response, these substantive arguments tracked her later mutual-mistake and ambiguity assertions that the terms of the release agreement and the post-release negotiations revealed that the parties mutually intended to release only the claims arising from McMurry's injuries. We conclude that a fair reading of Traweek's substantive arguments in the first response, coupled with her attached summary-judgment evidence, sufficiently raised the defenses for the trial court's consideration.

7

*See Salas v. Fluor Daniel Servs. Corp.*, No. 14-18-01103-CV, 2020 WL 7711332, at *6 (Tex. App.—Houston [14th Dist.] Dec. 29, 2020, no pet. h.) ("Under a liberal reading of Salas's response along with his summary judgment evidence, Salas presented the argument . . . ."); *City of Mansfield v. Savering*, No. 02-19-00174-CV, 2020 WL 4006674, at *11 n.15 (Tex. App.—Fort Worth July 16, 2020, pet. filed) (mem. op.) (concluding substantive argument in summary-judgment response fairly raised a defensive issue); *Wendt v. Sheth*, 556 S.W.3d 444, 448–49 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("[r]eading Wendt's summary-judgment response liberally" and finding misnomer argument sufficiently raised); *Blankenship v. Spectra Energy Corp.*, No. 13-12-00546-CV, 2013 WL 4334306, at *3 n.3 (Tex. App.—Corpus Christi–Edinburg Aug. 15, 2013, no pet.) (mem. op.) (concluding citations to case law pertaining to defensive issue in nonmovant's second summary-judgment response sufficiently raised the issue for appellate review); *Richmond v. L.D. Brinkman & Co. (Tex.) Inc.*, 36 S.W.3d 903, 905 n.2 (Tex. App.—Dallas 2001, pet. denied) ("Although [the] response to Brinkman's motion for summary judgment does not specifically state [preemption], in liberally construing the response, we assume the preemption argument was part of [a similar substantive argument]." (citing *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982))).

And even if the defenses were considered to have not been fairly raised in the first response, the trial court recited that it considered "the presented evidence," which overcomes the presumption that the trial court did not consider the late-filed second response. *See B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 262 (Tex.

2020) (per curiam) ("[W]hile we presume that a trial court did not consider a late-filed response absent an affirmative indication in the record, a recital in a summary-judgment order that the trial court considered "the evidence" without qualification or limitation overcomes that presumption.").

We conclude that because Traweek fairly raised mutual mistake and ambiguity in the first response and because the trial court considered the defenses as raised in the second response, the defenses are appropriately before us today. *See Pettigrew v. Gastineau*, No. 10-18-00203-CV, 2020 WL 6066107, at *4 n.4 (Tex. App.—Waco Oct. 14, 2020, no pet.) (mem. op.) (citing *B.C.*, 598 S.W.3d at 260–61). We now determine whether the trial court's summary judgment was appropriate on the bases that were before the trial court and preserved in this appeal. *See Cincinnati Life Ins. Co v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

## C. GENUINE ISSUE OF MATERIAL FACT

### 1. Ambiguity

Traweek first argues that the release agreement was ambiguous because it was susceptible to a reasonable meaning different than the meaning asserted by Long.[1]

---

[1]Admittedly, we are broadly reading Traweek's sparse appellate arguments. But we are to liberally and reasonably construe briefs, considering the parties' arguments, evidence, and citations, in order to resolve appeals on the merits and not on procedural defects. *See Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, No. 19-0343, 2020 WL 7413725, at *2 (Tex. Dec. 18, 2020) (per curiam) (citing *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 214 (Tex. 2020) (per curiam) and *Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019) (per curiam)). The substance of

"A release is an agreement or contract in which one party agrees that a legal right or obligation owed by the other party is surrendered." *D.R. Horton–Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 226 (Tex. App.—Fort Worth 2013, no pet.); *see Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). A release is subject to the rules of contract construction. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990); *D.R. Horton–Tex.*, 416 S.W.3d at 226; *In re J.P.*, 296 S.W.3d 830, 835 (Tex. App.—Fort Worth 2009, no pet.). In construing a release, our primary task is to determine the true intentions of the parties as expressed in the language of the agreement. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019). If a contract can be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous and must be construed as a matter of law. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019); *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012). But if the language of a contract is subject to two or more reasonable interpretations, then the release is ambiguous, raising a genuine issue of material fact on the interpretation of the release agreement. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam) (op. on reh'g).

An ambiguity in a release may be patent or latent. *Id.* A patent ambiguity is evident on the face of the release. *Id.* A latent ambiguity occurs when a facially

Traweek's arguments and her citations to the summary-judgment evidence are sufficient to raise the issues addressed in our opinion.

10

unambiguous release is applied to its subject matter and an ambiguity appears by reason of some collateral matter. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 765–66 (Tex. 2018); *CBI Indus.*, 907 S.W.2d at 520. Here, the language of the release agreement, which both McMurry and Traweek signed, is broad and purports to release "any and all claims" arising from the accident. Long asserts that this language unambiguously released all of McMurry's claims and all of Traweek's individual claims arising from the accident. Traweek contends that the language released only claims arising from McMurry's injuries, pointing to the post-release negotiations between her and Long in an attempt to settle her individual negligence claim. *See, e.g., Lowe v. Watson*, No. 01-20-00251-CV, 2020 WL 7349506, at *5 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, no pet. h.) (mem. op.) (recognizing husband's signature on release of claims arising from wife's injuries was latently ambiguous because it could have been a release of only husband's derivative loss-of-consortium claim or of both his loss-of-consortium and negligence claims).

We conclude that the language of the release allows two reasonable interpretations of its scope: (1) the agreement released McMurry's and Traweek's claims arising from the accident or (2) the agreement released McMurry's claim and Traweek's derivative claim arising from McMurry's injuries, but not her individual negligence claim arising from her injuries. *See, e.g., id.* at *4–5; *cf. In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009) (orig. proceeding) (recognizing injured family member's release of tortfeasor from liability also released derivative, wrongful-death

11

claims); *Whittlesey v. Miller*, 572 S.W.2d 665, 669 (Tex. 1978) (holding scope of husband's release did not extend to nonsignatory wife's derivative loss-of-consortium claim). Thus, the release agreement contains a latent ambiguity. *See Lowe*, 2020 WL 7349506, at *4–5. This latent ambiguity allows admission of parol evidence to determine the parties' intent regarding the intended scope of the release. *CBI Indus.*, 907 S.W.2d at 520; *Murphy v. Dilworth*, 151 S.W.2d 1004, 1005 (Tex. 1941); *Lowe*, 2020 WL 7349506, at *4; *RPC, Inc. v. CTMI, LLC*, 606 S.W.3d 469, 484–85 (Tex. App.—Fort Worth 2020, pet. filed). Traweek relies on her post-release settlement negotiations with Long regarding her individual negligence claim, which she attached to her summary-judgment response. This objective evidence of the surrounding circumstances of the parties' mutual understanding of the effect of the prior release raised a genuine issue of material fact regarding the scope of the release and its interpretation, rendering summary judgment inappropriate. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) ("When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue.").

Traweek's deemed admissions do not affect this conclusion. Although Traweek admitted that she voluntarily signed and understood the import of the terms of the release agreement, she did not admit what those terms meant regarding the scope of the release agreement. The admissions merely established that the release agreement was valid on its face—it was patently unambiguous. *See J.P.*, 296 S.W.3d at

12

835. Traweek relied on a latent ambiguity regarding intent in the release agreement, supported by objective summary-judgment evidence of the surrounding circumstances regarding the correct interpretation of the ambiguity; thus, she raised a genuine issue of material fact, precluding summary judgment. *See Coker*, 650 S.W.2d at 394.

## 2. Mutual Mistake

But even if Traweek's admissions barred her from arguing ambiguity, we conclude that she has raised a fact issue on her defense of mutual mistake. Traweek argues that the post-release letters between her attorney and Long's insurer demonstrate that both she and Long contemplated that only claims arising from McMurry's injuries were being released, notwithstanding the "any and all claims" language in the agreement. To rely on mutual mistake to avoid the effect of the release agreement and Long's summary-judgment motion, Traweek must have raised a genuine and material fact issue that (1) a mistake of material fact occurred, (2) the mistake was mutual, and (3) the mistake materially affected the agreed upon exchange. *See de Monet v.* PERA, 877 S.W.2d 352, 357 (Tex. App.—Dallas 1994, no writ). Under the doctrine of mutual mistake, an agreement may be avoided if the parties contracted under a misconception about or ignorance of a material fact. *Williams*, 789 S.W.2d at 264.

Contrary to Long's appellate argument, extrinsic proof of mutual mistake is not barred by the parol-evidence rule. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*,

13

300 S.W.3d 746, 751 (Tex. 2009); *Williams*, 789 S.W.2d at 264; *Santos v. Mid-Continent Refrigerator Co.*, 471 S.W.2d 568, 569 (Tex. 1971) (per curiam). But such parol evidence must be more than subjective statements of the parties' intent; a genuine issue of material fact regarding mutual mistake must be raised by "objective circumstances surrounding execution of the release, such as the knowledge of the parties at the time of signing concerning the injury, the amount of consideration paid, the extent of negotiations and discussions as to personal injuries, and the haste or lack thereof in obtaining the release." *Williams*, 789 S.W.2d at 264.

The August 10, 2017 agreement, signed by Traweek and McMurry, settled and released "any and all claims . . . I/we now have or which may hereafter accrue" for $6,500 "to be paid to [McMurry]." Over the next nine months, Traweek and Long's insurer attempted to settle Traweek's individual negligence claim. Traweek claimed $22,755.50 in past medical expenses and rejected Long's insurer's offers of $8,504 and $12,900. Traweek filed suit against Long seven months after the $12,900 offer. Although the release agreement applied to "any and all claims," Long and Traweek continued to attempt to settle claims arising from Traweek's injuries after the release agreement had been executed. In other words, "[t]he only evidence that these parties intended to release [Traweek's] claim [arising from her injuries] . . . is the language of the release itself." *Williams*, 789 S.W.2d at 264. This tension between the broad language of the release agreement and the parties' objective manifestations of their apparent common understanding of the release's more narrow scope raised a genuine

14

issue of material fact on mutual mistake. *See id.* at 264–65; *see also Matlock v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 925 F. Supp. 468, 474–75 (E.D. Tex. 1996) (mem. order); *Hardy v. Bennefield*, 368 S.W.3d 643, 651 (Tex. App.—Tyler 2012, no pet.); *Bolle, Inc. v. Am. Greetings Corp.*, 109 S.W.3d 827, 836–37 (Tex. App.—Dallas 2003, pet. denied).

### III.  CONCLUSION

Although Traweek did not specifically raise mutual mistake or ambiguity until her late-filed second summary-judgment response, these defenses were fairly and timely raised in the first response and, in any event, were considered by the trial court. The objective summary-judgment evidence that Traweek and Long continued settlement negotiations on Traweek's individual negligence claim for months after the release agreement had been executed, and the evidence that the settlement amount in the release agreement was less than even the lowest settlement offer for Traweek's individual negligence claim, established a genuine issue of material fact on mutual mistake. This same evidence also revealed a latent ambiguity in the release, raising a fact issue on the release agreement's interpretation. Accordingly, the trial court erred by granting Long judgment as a matter of law on Traweek's individual negligence claim arising from her injuries. We sustain Traweek's appellate issue, reverse the trial court's summary-judgment order, and remand the case for further proceedings. *See* Tex. R. App. P. 43.2(d), 43.3(a).

/s/ Brian Walker

Brian Walker
Justice

Delivered:  February 25, 2021