**PARKER DRILLING COMPANY**
**& Parker Drilling Company**
**(Bolivia) S.A., Appellants**

v.

**ROMFOR SUPPLY COMPANY**
**& Romfor West Africa**
**Ltd., Appellees.**

No. 14–08–00875–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 8, 2010.

Rehearing Overruled Aug. 12, 2010.

Jeffrey L. Oldham, Andrew F. Spalding, Nell Frances Connally, Houston, for appellants.

Larry D. Harvey, Houston, for appellees.

Panel consists of Justices YATES, FROST, and BROWN.

## OPINION

LESLIE YATES, Justice.

Appellants Parker Drilling Company and Parker Drilling Company (Bolivia) S.A. (collectively "Parker") appeal from a judgment entered in favor of appellees Romfor Supply Company and Romfor West Africa Ltd. (collectively "Romfor") in a breach of contract case. In three issues, Parker argues the evidence is legally insufficient to support the jury's finding of a contract between Parker and Romfor, the trial court erred as a matter of law in awarding damages against Parker, and the trial court's award of attorney's fees in favor of Romfor is erroneous. Because we find the evidence is legally insufficient to support the jury's finding of a contract between Parker and Romfor, we reverse the trial court's judgment and render judgment that Romfor take nothing.

## I. BACKGROUND

Parker and Romfor are companies engaged in drilling for oil in various locations throughout the world. In early 2003, Romfor learned that Parker was selling equipment out of its worldwide fleet. Romfor expressed interest in purchasing one of Parker's oil rigs located in Nigeria ("Rig 220") because it was planning to begin drilling operations in the Congo along with Caroil S.A., Romfor's French venture partner. Romfor and Parker signed a letter of intent for Romfor to purchase Rig 220 for $800,000. Before a contract was finalized, Parker informed

Romfor that it was withdrawing its offer to sell Rig 220 because it had accepted a third party's offer. Parker subsequently provided Romfor with a list of other rigs available for sale, and Romfor decided to pursue an agreement to purchase a rig located in Bolivia ("Rig 118") for $1,745,000. Romfor's president, Stuart Breckon, travelled to Bolivia in May 2003 to inspect Rig 118 and determined the rig needed certain repairs before being transported to the Congo. Following Breckon's visit to Bolivia, Parker and Romfor entered into an agreement (the "Service Agreement") under which Parker would repair Rig 118 and Romfor would pay Parker for the repairs. A contract for the sale of Rig 118 was finalized in June 2003, and Parker shipped Rig 118 to the Congo during the last week of June 2003 after completing the repairs requested by Romfor.

While in Bolivia, Breckon learned that Parker was winding down drilling operations in that country and was looking to sell much of its equipment located there. Breckon signed a document offering to purchase eleven pieces of equipment from Parker for $84,000 ("Romfor's Offer"). Included in these eleven pieces of equipment were three Gardner Denver PZ–9 mud pumps (the "Mud Pumps"),[1] which Romfor offered to purchase for $6,000 each. Parker did not officially respond to Romfor's Offer; however, Parker shipped the eight items other than the Mud Pumps to Africa along with Rig 118, and Romfor later paid Parker for these eight items. After Rig 118 left Bolivia, Patricia Carreras, Parker's financial administrator, informed Breckon that Parker intended to sell the Mud Pumps to SOCO Bolivia S.R.L.

("SOCO")[2] for $21,429, and that SOCO would be responsible for refurbishing and exporting the pumps.

Parker subsequently invoiced the pumps to SOCO (the "Parker/SOCO Invoice") and SOCO finished repairing the pumps. Over the next several months, SOCO repeatedly asked Romfor to pay the pumps' purchase price and repair costs, and continually informed Parker that it could not pay for the pumps because Romfor had not yet paid SOCO for them. In January 2004, Parker notified SOCO that it was cancelling the sale of the Mud Pumps because SOCO had not paid the purchase price. SOCO cancelled the Parker/SOCO Invoice in February 2004 and Parker regained possession of the pumps. In April 2004, Parker invoiced the Mud Pumps to SOCO again after SOCO informed Parker that it had received an offer from a third party to purchase the pumps for $90,000. Parker re-sold the pumps to SOCO for $21,429. SOCO kept all of the profit from the subsequent sale to the third party.

After being notified that Parker had regained possession of the pumps, Romfor demanded that Parker refund Romfor $68,680, the total amount SOCO had invoiced Romfor for repairing and storing the Mud Pumps. Parker refused to refund any amount, claiming there was no contract for the sale of the Mud Pumps between itself and Romfor. Romfor filed suit against Parker in March 2006, alleging that Parker and Romfor contracted for the sale of the Mud Pumps and that Parker breached this contract. The jury found that Parker agreed to sell the Mud Pumps to Romfor and that Parker failed to comply with the agreement. The jury then

1. Mud pumps act as the "circulatory system" for the drilling rig by circulating drilling fluid down drilling holes.

2. SOCO is a Bolivian company that assisted in Rig 118's repairs by coordinating catering and transportation services and by hiring ex-Parker employees selected by Romfor to repair the rig.

awarded Romfor $68,571 in damages. The trial court entered final judgment in Romfor's favor, awarding Romfor $90,000 in damages[3] and $100,000 in attorney's fees, along with additional contingent attorney's fees for appeal.

Parker raises three issues on appeal. In its first issue, Parker argues the evidence is legally insufficient to show the formation of a contract between Parker and Romfor for the sale of the Mud Pumps. Next, Parker asserts there is legally insufficient evidence to support the jury's damage award of $68,571 and the trial court's final damage award of $90,000. Finally, Parker contends the trial court's award of $100,000 in attorney's fees should be reversed because it is legally unsupportable.

## II. ANALYSIS

### A. Standard of Review

In its first issue, Parker alleges there is no evidence of a contract between Parker and Romfor for the sale of the Mud Pumps. In a legal sufficiency or no-evidence review, we determine whether the evidence would enable reasonable and fair-minded individuals to reach the verdict under review. See City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.2005). While conducting this review, we credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. See id. Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony, and we cannot impose our own opinions to the contrary. Id. at 819. We must consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. See id. at 822. We must, and may only, sustain no-evidence points when either (1) the record reveals a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. See id. at 810.

### B. Elements of Contract Formation

To recover for breach of contract, a plaintiff must show (1) the existence of a valid contract, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff suffered damages as a result of defendant's breach. Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). A legally enforceable contract consists of (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. Wal–Mart Stores, Inc. v. Lopez, 93 S.W.3d 548, 555–56 (Tex.App.-Houston [14th Dist.] 2002, no pet.); see also AKIB Constr., Inc. v. Neff Rental, Inc., No. 14–07–00063–CV, 2008 WL 878935, at *3 (Tex.App.-Houston [14th Dist.] Apr. 3, 2008, no pet.) (mem. op.). Whether the parties reached an agreement is a question of fact. Advantage Physical Therapy, Inc. v. Cruse, 165 S.W.3d 21, 24 (Tex.App.-Houston [14th Dist.] 2005, no pet.). Whether an agreement is legally enforceable, however, is a question of law. See id.; Gaede v. SK Invs., Inc., 38 S.W.3d 753, 757 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

---

3. The trial court added $21,429—the amount SOCO ultimately paid Parker for the Mud Pumps—to the jury's damage award.

■■■ In this case, there is no writing signed by Parker acknowledging its acceptance of Romfor's Offer.[4] However, the jury could properly imply the formation of a contract between Parker and Romfor from any conduct by both parties recognizing the existence of a contract. *See* TEX. BUS. & COM.CODE ANN. § 2.204(a) (Vernon 2009); *Adams v. H & H Meat Prods., Inc.,* 41 S.W.3d 762, 771 (Tex.App.-Corpus Christi 2001, no pet.); *see also Wal–Mart,* 93 S.W.3d at 557 (describing implied contracts as those inferred from the acts and conduct of the parties when the facts and circumstances show a mutual intent to contract). The existence of an implied contract involves inferences drawn from circumstantial evidence and is therefore a question of fact. *See Domingo v. Mitchell,* 257 S.W.3d 34, 40 (Tex.App.-Amarillo 2008, pet. denied); *Ishin Speed Sport, Inc. v. Rutherford,* 933 S.W.2d 343, 348 (Tex. App.-Fort Worth 1996, no writ). Questions of contract formation must be resolved on objective standards, based upon the meaning reasonably conveyed by the parties' actions and words rather than their uncommunicated subjective intentions. *Harrison v. Williams Dental Group, P.C.,* 140 S.W.3d 912, 916 (Tex. App.-Dallas 2004, no pet.); *Angelou v. African Overseas Union,* 33 S.W.3d 269, 278 (Tex.App.-Houston [14th Dist.] 2000, no

pet.). We view the conduct and circumstances surrounding the transaction from a reasonable person's interpretation at that particular point in time. *Wal–Mart,* 93 S.W.3d at 557–58.

According to Parker, the only contract for the sale of the Mud Pumps shown by the evidence is between Parker and SOCO. Romfor argues a contract between itself and Parker is clearly shown by the Sales and Service Agreements, Romfor's Offer,[5] and the parties' actions. After reviewing the record, we conclude there was no contract between Parker and Romfor for the sale of the Mud Pumps. There was no meeting of the minds between Parker and Romfor regarding the pumps, and the parties' conduct shows that Parker contracted to sell the pumps to SOCO.

### 1. No Evidence of Acceptance of Romfor's Offer

■■■ Parker contends the evidence shows it did not accept Romfor's Offer in accordance with its terms and that "a different plan for the [Mud Pumps] was understood and followed by both Parker and Romfor." To create an enforceable contract, there must be a clear and definite offer followed by a clear and definite acceptance in accordance with the offer's terms. *See Levin Law Group, P.C. v.*

---

4. Romfor contends Parker raises a statute of frauds defense on appeal and that Parker waived this argument by failing to raise the issue before the trial court. *See* TEX.R. CIV. P. 94 (listing statute of frauds as an affirmative defense); *Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.,* 48 S.W.3d 865, 875 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (stating statute of frauds defense is waived if it is not pleaded). We agree with Parker that this contention lacks merit, as Parker is simply challenging the legal sufficiency of the evidence to prove the existence of any contract, written or otherwise, to sell the Mud Pumps between itself and Romfor.

5. We note that each of these documents were executed at different times and do not expressly refer to one another. However, we may consider them together to ascertain the parties' intent. *See City of Keller,* 168 S.W.3d at 811; *Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 840 (Tex.2000). Additionally, although Parker and Caroil are the Service Agreement's only signatories, Romfor was heavily involved in negotiating the Sales Agreement, the Sales Agreement provides for written notices to be copied to Romfor and names Romfor as Rig 118's purchaser, and Caroil's payment of the rig's purchase price was coordinated by Romfor.

*Sigmon,* No. 14–08–01165–CV, 2010 WL 183525, at *3 (Tex.App.-Houston [14th Dist.] Jan. 21, 2010, pet. denied) (mem. op.); *Angelou,* 33 S.W.3d at 278. A purported acceptance that changes or qualifies an offer's material terms constitutes a rejection and counteroffer rather than an acceptance. *See Lewis v. Adams,* 979 S.W.2d 831, 834 (Tex.App.-Houston [14th Dist.] 1998, no pet.); *see also Knowles v. Wright,* 288 S.W.3d 136, 143 (Tex.App.-Houston [1st Dist.] 2009, pet. denied) (recognizing the material terms of a contract must be agreed upon before a contract may be enforced).

 The question of whether a contract contains all the essential terms for it to be enforceable is a question of law. *See Beal Bank, S.S.B. v. Schleider,* 124 S.W.3d 640, 653 n. 8 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). Contracts should be examined on a case-by-case basis to determine which terms are material or essential. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992); *see also John Wood Group USA, Inc. v. ICO, Inc.,* 26 S.W.3d 12, 20 (Tex.App.-Houston [1st Dist.] 2000, pet. denied) (listing the essential elements for a contract for sale as (1) the object of the contract or thing sold, (2) the consideration to be paid, and (3) the parties' consent to the exchange); *cf.* BLACK'S LAW DICTIONARY 1510 (8th ed. 2004) (defining "material terms" as "contractual provision[s] dealing with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done"). Here, Romfor's Offer contains the following material terms: (1) Romfor will purchase eleven items of equipment from Parker, including the Mud Pumps, (2) Romfor will pay Parker $84,000 for all eleven items, and (3) the Mud Pumps will be exported out of Bolivia while the remaining eight items are to be shipped along with Rig 118 to the Congo.

The record does not reflect a written response by Parker to Romfor's Offer until July 10, 2003, when Carreras sent an e-mail changing several of the offer's terms to Breckon. The e-mail states, in relevant part:

> As you will see [the Mud Pumps] are still in [Bolivia] for repairs. Due to local regulations, we will need to bill these with a local invoice, subject to VAT and Transaction Tax. The plan is for SOCO to be the buyer so they can finish the repairs and take care of the exportation whenever that happens. By doing this we can release Parker from the operations related to this sale, and hopefully wrap up everything in July.

Carreras's e-mail also includes a document that further modifies Romfor's Offer by separating the Mud Pumps from the other eight items Romfor wanted to purchase and breaking the $84,000 Romfor was willing to pay for all eleven items into two groups: $21,429 for the pumps[6] and $66,000 for the remaining eight items.

It is clear that Carreras's e-mail changed several of the material terms of Romfor's Offer, including (1) the total number of items Romfor would purchase from Parker, (2) the total price Romfor would pay Parker for these items, (3) the price for the Mud Pumps, and (4) the party who would ultimately purchase the Mud Pumps from Parker. *See John Wood Group USA,* 26 S.W.3d at 20.[7] By chang-

---

**6.** This total includes $6,000 for each individual Mud Pump plus an additional $3,428.57 in taxes.

**7.** *See also Potcinske v. McDonald Prop. Invs., Ltd.,* 245 S.W.3d 526, 530–31 (Tex.App.-Hous-

ton [1st Dist.] 2007, no pet.) (upholding trial court's determination that no contract was formed between parties where offeree changed offer's financing option, a material term, and offeror failed to accept the request-

ing the material terms of the offer, Carreras's e-mail constitutes a rejection of Romfor's Offer and a counteroffer. *See Knowles*, 288 S.W.3d at 143; *Lewis*, 979 S.W.2d at 834. Breckon acknowledged receiving this notification and stated he did not object because the sale of Mud Pumps was a relatively small portion of the Rig 118 project. This shows that Romfor was aware Parker planned to sell the pumps to SOCO and the parties acted according to this understanding. Romfor had ample notice that Parker did not accept its offer to purchase all eleven pieces of equipment in strict compliance with the offer's terms, thus negating an essential element of contract formation. *See, e.g., Wal–Mart*, 93 S.W.3d at 555–56.

## 2. No Evidence of a Meeting of the Minds or Mutual Assent

■ Romfor argues Carreras's e-mail does not show a rejection of Parker's Offer because it was not sent until after Parker transported Rig 118 and the other eight items included in Romfor's Offer to Africa. According to Romfor, Parker's shipment of the eight additional items shows that Parker accepted Romfor's Offer, thereby creating a contract for the sale of the Mud Pumps. In response, Parker argues the actions and communications of the parties show no meeting of the minds or mutual intent to contract for the sale of the Mud Pumps. We conclude that the acts of the parties related to the Mud Pumps do not show the existence of a contract between Parker and Romfor.

■ Regardless of whether a contract is based on express or implied promises, mutual assent must be present. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009). In cases involving implied contracts, mutual intent is inferred from the circumstances. *Id.* In determining whether mutual assent is present, courts consider the communications between the parties, the acts and circumstances surrounding the communications, and any course of dealing between the parties. *See Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex.1972); *Angelou*, 33 S.W.3d at 278. The minds of the parties must also meet with respect to the agreement's subject matter and essential terms. *See Wal–Mart*, 93 S.W.3d at 556. The determination of a meeting of the minds is based on the objective standard of what the parties said and did, not on their subjective states of mind. *Angelou*, 33 S.W.3d at 278. This determination is a question of fact, and the factfinder's decision that one party reasonably drew the inference of a promise from the other party's conduct will be given legal effect. *Id.; see also Fraud–Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 386 (Tex.App.-Fort Worth 2003, pet. denied). The parties' conduct determines the terms of the contract on which the parties' minds met. *See Wal–Mart*, 93 S.W.3d at 557.

According to Breckon, Parker indicated it would provide Romfor additional equipment related to Rig 118 at a discount

ed change); *Gasmark, Ltd. v. Kimball Energy Corp.*, 868 S.W.2d 925, 928 (Tex.App.-Fort Worth 1994, no writ) (determining offeree significantly altered terms of natural gas purchase and sales contract offer by sending an amended purchase agreement changing billing and payment provisions); *cf. Adams*, 41 S.W.3d at 768–73 (finding buyer liable for breach of contract damages where seller was

not paid for three shipments of meat products delivered by seller to intermediary, despite non-existence of signed writing by buyer guaranteeing payment for delivery to intermediary, where buyer instructed seller to send product to intermediary for permit purposes and unpaid shipments directly matched buyer's orders).

because Parker withdrew its offer to sell Rig 220 to Romfor. Breckon testified he "offered very low prices" in Romfor's Offer to "make back some of this bait and switch that [Parker] had done" with the price difference between Rig 220 and Rig 118. Romfor argues that these facts, considered with the parties' actions and communications surrounding the Sales Agreement and the Service Agreement, show a meeting of the minds between Parker and Romfor. The evidence, however, proves the contrary.

Neither the Sales Agreement nor the Service Agreement mentions any of the items included in Romfor's Offer. The Service Agreement simply states that Parker will be responsible for "perform[ing] certain services in connection with Rig 118." Romfor argues these "certain services" included refurbishing and exporting the Mud Pumps according to the terms of Romfor's Offer. There is, however, no evidence that Parker was involved in repairing the Mud Pumps. Instead, Parker released the pumps to SOCO, who then informed Romfor that it was repairing the pumps. Carreras subsequently notified Romfor that Parker would sell the pumps to SOCO. Breckon acknowledged receiving this notification, and Romfor voiced no objection. All of the communications regarding repairs performed on the Mud Pumps were between Romfor and SOCO. This course of dealing is different than Parker's involvement in the repairing of Rig 118. The Rig 118 repairs were over-seen by Mike Alborta, Parker's operations manager, and performed by ex-Parker employees selected by Romfor and hired by SOCO. Alborta, along with many of the individuals hired by SOCO, obtained employment with Romfor and went to the Congo with Rig 118 at the end of June 2003. This left Parker with no representatives involved in repairing the Mud Pumps. Breckon acknowledged at trial that SOCO was involved in repairing the Mud Pumps in exactly the same way as Parker was involved in the Rig 118 project, thus differentiating Parker's obligations under the Service Agreement and its activities related to the pumps.

Additionally, none of the documentary evidence in the record points to a contract for the Mud Pumps between Parker and Romfor. Parker's communications to Romfor plainly state that SOCO would purchase the pumps from Parker, and the Parker/SOCO Invoice does not mention Romfor.[8] Carreras testified the Parker/SOCO Invoice constituted a transfer of ownership and that Parker removed the pumps from its asset records after issuing the invoice. Carreras and Breckon both testified that Parker, Romfor, and SOCO understood that Parker would not be paid the pumps' $21,429 purchase price until Romfor first paid SOCO. Parker continuously looked to SOCO for payment of the purchase price and only SOCO attempted to recover funds related to the Mud Pumps directly from Romfor.[9] Additional-

8. In one internal e-mail discussing SOCO's interest in purchasing equipment from Parker, Carreras states "as a reference[,] we sold RomFor [sic] PZ–9's at USD 6,000 each." Romfor argues this evidence shows the pumps were, in fact, sold by Parker to Romfor. This statement is conclusively negated by the undisputed documentary and testimonial evidence showing the only party ever invoiced or billed for the pumps by Parker was SOCO. This e-mail does not constitute legally suffi-cient evidence to show the formation of a contract between Parker and Romfor. *See City of Keller*, 168 S.W.3d at 820 (stating jury may not credit evidence that is conclusively negated by undisputed facts).

9. Romfor points to a September 19, 2003 e-mail from Carreras to Breckon referencing several "SocoRomfor" invoices—including the Parker/SOCO Invoice—as evidence that Parker sought payment for the pumps directly from Romfor. However, the e-mail clearly

ly, none of Parker's documentation related to the Service Agreement reference the Mud Pumps. In September 2003, Parker invoiced Romfor $230,537.61 for Service Agreement obligations. This amount included $66,000 for the eight items from Romfor's Offer shipped with Rig 118 but does not include any amount for the Mud Pumps. Romfor paid the $230,537.61 directly to Parker, and Breckon acknowledged the $66,000 charge for additional assets sent with Rig 118 did not include the Mud Pumps.

This evidence clearly shows that each of the parties acted as though Parker sold the Mud Pumps to SOCO, not to Romfor. Parker invoiced the Mud Pumps to SOCO, only SOCO was involved in repairing and seeking payment for the pumps, and the pumps were not included in any of Parker's requests for payment under the Sales or Service Agreements. After objectively reviewing the parties' communications, acts, and circumstances surrounding the communications, we find there was no meeting of the minds or mutual intent to contract for the sale of the Mud Pumps between Parker and Romfor. *See Haws & Garrett*, 480 S.W.2d at 609; *Angelou*, 33 S.W.3d at 278. Also, based on the evidence showing that Romfor did not object to Parker's proposal to sell the pumps to SOCO, we conclude the jury could not determine that Romfor could reasonably infer a promise by Parker to sell the Mud Pumps to Romfor. *See Fraud–Tech*, 102 S.W.3d at 386; *Angelou*, 33 S.W.3d at 278. Therefore, the evidence shows there was no meeting of the minds or mutual assent to contract between Parker and Romfor. *See Levin Law Group*, 2010 WL 183525, at *4–5 (concluding no contract to mediate existed where the "communications be-

tween the parties and the acts and circumstances surrounding those communications" did not indicate a meeting of the minds regarding the essential terms of an alleged contract to mediate); *see also Wal–Mart*, 93 S.W.3d at 557 (stating a meeting of the minds regarding contract terms is determined by the parties' conduct).

Although Texas law favors validating transactions rather than voiding them, a reviewing court may not create a contract where none exists. *See Knowles*, 288 S.W.3d at 143. After reviewing the evidence in the light most favorable to the verdict, we find that Romfor failed to prove each of the elements necessary to establish the existence of a legally enforceable contract. *See Advantage Physical Therapy*, 165 S.W.3d at 24 (recognizing the existence of a legally enforceable agreement is a question of law); *Wal–Mart*, 93 S.W.3d at 555–56 (stating there must be a meeting of the minds and acceptance in strict compliance with an offer's terms to form a valid contract). This renders the evidence legally insufficient to support the jury's verdict. *See City of Keller*, 168 S.W.3d at 810 (stating evidence is legally insufficient when record reveals a complete absence of a vital fact). Accordingly, we sustain Parker's first issue.

### C. Parker's Remaining Issues

Because there is legally insufficient evidence of a contract between Parker and Romfor, Romfor is not entitled to recover breach-of-contract damages. *See Peterson v. Jansen*, No. 14–07–00535–CV, 2009 WL 334915, at *6 (Tex.App.-Houston [14th Dist.] Feb. 12, 2009, no pet.) (mem. op.) (listing the existence of a valid contract as a prerequisite to recovery for

---

asks Breckon to "coordinate with SOCO to make the payment so [Parker] can collect the money that is pending." This message does not show that Parker sought payment of the purchase price from Romfor.

breach of contract); *Aguiar*, 167 S.W.3d at 450 (same). Additionally, an award of attorney's fees in a breach of contract claim is appropriate only if a party prevails and recovers damages. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 2008) (allowing recovery of attorney's fees in valid claims involving oral or written contracts); *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex.1995); *Peterson*, 2009 WL 334915, at *6. Thus, there is no legal basis for the recovery of either damages or attorney's fees and the awards in the judgment for damages and attorney's fees fail on this basis. Thus, we do not reach Parker's second issue challenging the sufficiency of the evidence to support the damages award or Parker's third issue challenging the reasonableness of the attorney's fees awarded.

### III. CONCLUSION

After reviewing the evidence in the light most favorable to the verdict, we find the evidence is legally insufficient to show the existence of a contract for the sale of the Mud Pumps between Parker and Romfor. Because no legally enforceable contract was formed in this case, Romfor is not entitled to recover breach-of-contract damages or attorney's fees. Accordingly, we reverse the trial court's judgment and render judgment that Romfor take nothing.