**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 14, 2012

No. 10-51166

Lyle W. Cayce
Clerk

BRIAN LARREMORE; JEAN LARREMORE,

Plaintiffs–Appellants

v.

LYKES BROTHERS INC,

Defendant–Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:08-CV-21

Before BENAVIDES, PRADO, and GRAVES, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:[*]

In this diversity jurisdiction case, Brian and Jean Larremore challenge the district court's judgment enforcing a mediation agreement that settled a property boundary dispute between the Larremores and Lykes Brothers, Inc. ("Lykes"). After oral argument, we sua sponte questioned our jurisdiction and remanded to the district court for the limited purpose of determining whether the amount in controversy exceeded $75,000. *Larremore v. Lykes Bros. Inc.*, No. 10-51166, 2011 WL 6221500, at *2 (5th Cir. Dec. 14, 2011) (per curiam)

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in FIFTH CIR. R. 47.5.4.

No. 10-51166

(unpublished).  The district court held a hearing on the jurisdictional issue on January 6, 2012, and on February 6, 2012, issued a memorandum and opinion concluding that the amount in controversy exceeded $75,000.  *Larremore v. Lykes Bros. Inc.*, No. 08-CV-21, slip op. at 10 (W.D. Tex. Feb. 6, 2012).  Confident now in our jurisdiction over the case, we turn to the merits of the appeal, and affirm.

## I.  BACKGROUND

In April 2008, the Larremores sued Lykes in Texas state court, seeking to enjoin Lykes from blocking the Larremores' access to a tract of their land in Brewster County, Texas, via an old road that runs across Lykes's property, and seeking a declaration that the old road is an easement.  Lykes invoked diversity jurisdiction and removed the case to the United States District Court for the Western District of Texas.  After several months of pretrial discovery, the parties mediated the case and entered into a mediation agreement that set forth the terms of a proposed settlement.  Three of the mediation agreement's provisions are at issue in this appeal.  Paragraph 3(a) of the mediation agreement stated that the Larremores would convey to Lykes a piece of land "below the rim of the Kokernot Mesa, substantially as s[h]own in the Exhibit to Steve Walker's Report."  Paragraph 3(b) stated that "[t]he parties will cooperate to determine the boundary line where the rim opens at the head of the canyon."  Paragraph 3(d) stated that "[t]he parties agree to use Steve Walker to fix the boundaries . . . , such survey to be subject to the parties' approval."

In February 2009, the Larremores moved to set aside the mediation agreement, or in the alternative, to name a disinterested surveyor to re-survey.  The district court held a hearing in April 2009 to discuss the Larremores' motion.  During that hearing, the district court stated that paragraph 3(d) of the mediation agreement (the provision calling upon Steve Walker to fix boundaries "subject to the parties' approval") was unenforceable because it gave either party

2

the option of rejecting the surveyor's suggested boundaries. The district court then asked the parties: "If the Court names a special surveyor, are you going to abide by that surveyor, yes or no?" Each party responded affirmatively. The attorney for Lykes then stated:

> As I understand the [Larremores'] position . . . [,] we are in effect saying we are amending this agreement to change paragraph 3(d) to read that the independent surveyor will be appointed by the Court if we can agree to him . . . . And the parties are now telling the Court we will agree to be bound by that finding of that surveyor as to 3(d).

The Larremores' attorney responded that even if the mediation agreement were modified so the parties were bound by the court-appointed surveyor's findings, paragraph 3(a) was still ambiguous because it did not define what "below the rim" means. After the hearing, the parties agreed to appoint Maxey Sheppard as the surveyor. Moreover, the Larremores submitted a proposed order listing duties for Sheppard to carry out, including: "Determine the northern boundary of the lands to be conveyed . . . as set out in paragraph 3 of the Mediation Agreement . . . below the rim of the Kokernot Mesa, substantially as shown in the exhibit to Steve Walker's report in this case"; and "Determine the boundary line where the rim of the Kokernot Mesa opens at the head of the canyon, as set out in paragraph 3(b) in the Mediation Agreement."

In September 2009, the district court issued a memorandum and order formally granting the Larremores' request for a court-appointed surveyor but denying their request to set aside the mediation agreement. In its order, the district court determined that paragraph 3(d) in the mediation agreement was unenforceable, but that the parties "agreed through a binding stipulation [at the hearing] to the appointment of Maxey Sheppard to survey the property subject to the Mediation Agreement." It further determined that the phrase "below the rim" in paragraph 3(a) was not ambiguous because the mediation agreement

incorporated by reference a map that established the top of Kokernot Mesa. Finally, the district court adopted the Larremores' proposed order setting forth Sheppard's duties.

Sheppard carried out his duties and delivered a report some time before May 2010. In July 2010, Lykes moved to finalize Sheppard's report and enforce the mediation agreement. After a hearing, the district court granted the motion. Final judgment was entered on August 12, 2010, and the Larremores' timely appealed.

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

"We review the district court's contract interpretation de novo." *Interstate Contracting Corp. v. City of Dall., Tex.*, 407 F.3d 708, 712 (5th Cir. 2005). Under Texas law, which governs this dispute,[1] "[c]ompromise and settlement agreements are subject to the general principles of the law of contracts, and thus require a meeting of the minds." *Xtria L.L.C. v. Int'l Ins. Alliance Inc.*, 286 S.W.3d 583, 596 (Tex. App.—Texarkana 2009, pet. denied). A "meeting of the minds" means that the parties mutually assent "to the agreement's subject matter and essential terms." *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 75 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). "The determination of a meeting of the minds is based on the objective standard of what the parties said and did, not on their subjective states of mind." *Id.* "The

---

[1] *See R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) ("When a federal court sits in diversity jurisdiction, it must apply the choice of law rules of the forum state . . . ." (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941))); *McFadin v. Gerber*, 587 F.3d 753, 760 n.19 (5th Cir. 2009) ("In determining which law to apply to multistate contracts, Texas choice of law rules look to the factors listed in Restatement section 188 in order to determine which state has the most significant relationship to the transaction." (internal quotation marks omitted) (citing *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 233 (Tex. 2008))); Restatement (Second) of Conflict of Laws § 188(2) (listing factors to use in determining state with most significant relationship, such as "place of contracting," "place of negotiation of the contract," "place of performance," "location of the subject matter of the contract").

No. 10-51166

Texas Supreme Court has stated that a settlement agreement is to be judged by [Texas Rule of Civil Procedure] 11 standards." *Ortega-Carter v. Am. Int'l Adjustment Co.*, 834 S.W.2d 439, 442 (Tex. App.—Dallas 1992, writ denied) (citing *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex. 1984)).  Under Rule 11, "an agreement between opposing counsel is enforceable if it is . . . made in open court and entered of record." *Id.*

"Whether or not the invalidity of a particular [contract] provision affects the rest of the contract depends upon whether the remaining provisions are independent or mutually dependent promises, which courts determine by looking to the language of the contract itself." *In re Poly-America, L.P.*, 262 S.W.3d 337, 360 (Tex. 2008).  "The relevant inquiry is whether or not parties would have entered into the agreement absent the unenforceable provisions." *Id.*  Contract provisions are generally severable where they are "only a part of the many reciprocal promises in the agreement and did not constitute the main or essential purpose of the agreement." *Id.* (internal quotation marks omitted).

## III. DISCUSSION

The Larremores argue that the mediation agreement is unenforceable because three of its provisions were ambiguous and therefore did not reflect a mutual agreement. The allegedly unenforceable provisions are paragraphs 3(a), 3(b), and 3(d). The Larremores argue that paragraph 3(a) is ambiguous because the term "substantially" is undefined,[2] and because it does not quantify the amount of land conveyed. They argue that paragraph 3(b) is ambiguous because it "provides that the parties will cooperate to determine the boundary line where the rim opens at the head of the canyon," but "there is no[] agreement indicating a 'meeting of the minds' o[n] the boundary line and the rim." Paragraph 3(d) is

---

[2] As quoted above, paragraph 3(a) stated that the Larremores would convey to Lykes land "below the rim of the Kokernot Mesa, *substantially* as shown in the Exhibit to Steve Walker's Report in this case."

ambiguous, they argue, because it was "based on a survey, to be conducted by Steve Walker, [that] was subject to the approval of the parties." In support, the Larremores cite only *Bolle Inc. v. Am. Greetings Corp.*, which held that the trial court correctly applied the doctrine of mutual mistake in rescinding a settlement agreement where the parties' use of broad language in that agreement released other pending cases between them without either party's intent. 109 S.W.3d 827, 832–34 (Tex. App.—Dallas 2003, pet. denied).

In response, Lykes argues that the Larremores are attempting to set aside the original mediation agreement and ignoring their stipulations and conduct amending that agreement without any evidence or allegation of mistake or fraud. Lykes further argues that each of the provisions the Larremores claim is ambiguous was subsequently amended by stipulation in open court as a result of the Larremores' own request for a new independent surveyor to replace the Steve Walker survey and their requested instructions for a new surveyor.

The Larremores requested that the district court appoint a disinterested surveyor to replace Steve Walker's survey; they agreed to be bound by the disinterested surveyor's survey; they proposed an order setting forth the disinterested surveyor's duties, which stated that the surveyor would set the boundaries of the land to be conveyed pursuant to paragraph 3(a) and determine where the rim of the Kokernot Mesa opens at the head of the canyon pursuant to paragraph 3(b); and they agreed to Sheppard's appointment as the disinterested surveyor. That sequence of events reflects the Larremores' agreement, and thus a meeting of the minds, with respect to the content of paragraphs 3(a) and (b) of the mediation agreement: Sheppard would set the boundaries of the land to be conveyed to Lykes, Sheppard would determine where the rim of the Kokernot Mesa opens at the head of the canyon, and the parties would be bound by Sheppard's findings. *See Parker Drilling Co.*, 316 S.W.3d at 75; *MTrust Corp. N.A. v. LJH Corp.*, 837 S.W.2d 250, 253–54 (Tex.

No. 10-51166

App.—Fort Worth 1992, writ denied) (stating that it is "uniformly held" that an unsigned document may be incorporated by reference into a signed writing). Accordingly, paragraphs 3(a) and (b) were correctly enforced by the district court.[3]

## IV. CONCLUSION

For the foregoing reasons, the district court's order is affirmed.

AFFIRMED

---

[3] The Larremores' also claim that paragraph 3(d) is unenforceable because it allows either party to reject the survey's results, and is not severable from the rest of the mediation agreement. Their stipulation in open court to be bound by Sheppard's survey, however, reflects their on-the-record agreement to alter paragraph 3(d), effectively removing the phrase "such survey to be subject to the parties' approval," and replacing it with an agreement to be bound by the court-appointed surveyor's findings. *See Ortega-Carter*, 834 S.W.2d at 442 ("[A]greement[s] between opposing counsel [are] enforceable if . . . made in open court and entered of record.").