**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 14, 2013

Lyle W. Cayce
Clerk

No. 12-20435

AMERICAN GENERAL LIFE INSURANCE COMPANY,

Plaintiff - Appellee

v.

SHELDON CARTER BRYAN,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-1630

Before HIGGINBOTHAM, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Sheldon Carter Bryan ("Bryan") appeals from a summary judgment order determining a breach of a contract with the American General Life Insurance Company ("American General"). For the following reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20435

## FACTS AND PROCEEDINGS

American General is a life insurance company that sells its policies through agents, who are paid a commission on sales. Bryan entered into an agency contract (the "Agency Agreement") with American General in 2003. On the same day, Bryan executed an assignment ("the Assignment") that purported to transfer "all rights, privileges, duties, and obligations" under the assignor's "Agent Contract" to IMG Capital Management ("IMG Cap."). Neither the Agency Agreement nor the Assignment were countersigned by American General, though both documents were scanned into American General's computer system a little under a month after they were executed by Bryan.

This litigation arises from the sale of several life insurance policies in 2006 (the "Altman Policies") for which American General paid commissions. The Altman Policies were marketed and sold by two sub-agents working under Bryan's jurisdiction. Bryan was accordingly entitled to an override commission from the sale of the Altman Policies. American General paid the majority of Bryan's commission arising from the Altman Policies in a single check for $185,373.64. The commission check, which was made out to Bryan personally, was sent to the offices of IMG Inc.—a separate legal entity from IMG Cap.[1]—where it was endorsed by IMG Inc. and placed in IMG Inc.'s bank account. Bryan, who has been CEO of IMG Inc. since at least 2006, is the only individual who has authority to withdraw funds from IMG Inc.'s bank account.

The Altman Policies were eventually rescinded by American General. American General returned the paid premiums to the insured, and sought

---

[1] Bryan was president of IMG Cap. at the time the Agency Agreement and Assignment were executed in 2003; Carter Bryan (Sheldon Bryan's father) subsequently took over as President of IMG Cap. Carter Bryan is, at present, the president and sole shareholder of IMG Cap.

repayment from Bryan for the commission paid on the policies, arguing Bryan was contractually bound under the Agency Agreement to repay the money.

The district court granted summary judgment for American General, concluding that there were no genuine issues of material fact and that Bryan was contractually obligated to repay the commissions. Bryan contended there was no contractual relationship between the parties because he assigned his rights and responsibilities under the Agency Agreement to another party, thereby absolving him of any duty to repay the commissions. Moreover, Bryan argued that he neither knew of, nor actually received, the disputed commissions.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Pustejovsky v. Pliva, Inc.*, 623 F.3d 271, 275-76 (5th Cir. 2010). No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). We view the facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nonetheless, the non-moving party must do more than simply deny the allegations raised by the moving party. *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992). The non-moving party must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. *Id.* We may affirm summary judgment on any basis raised below and supported by the record. *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 443 (5th Cir. 2009).

No. 12-20435

## DISCUSSION

The threshold issue for a Texas breach-of-contract case is determining whether there is a valid and enforceable contract between the parties.[2] *See Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).  A valid and enforceable contract exists if there is "(1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Id.*  The summary judgment record contains copies of the Agency Agreement between American General and Bryan.  American General submitted evidence that Bryan executed the standard agreement, returned it to American General, operated under its terms, and was paid commissions for his efforts.  Further, Bryan concedes that the evidence is "clear and indisputable" that he entered into the Agency Agreement with American General. We accordingly agree with both parties that the Agency Agreement is valid and enforceable.

Faced with clear record evidence on that point, Bryan instead focuses his challenge on appeal on whom the Agency Agreement is presently enforceable against.  Bryan argues that the district court erred when it found (1) that he concluded multiple agency agreements with American General, including one that post-dated the Assignment, and (2) the Assignment did not assign away Bryan's liabilities under the contract because the Assignment was unsigned, and therefore of no legal effect.  In light of two concessions from American General, we agree with Bryan that the district court's determination that the Assignment was without effect was in error.

---

[2] Paragraph VII.Q of the Agency Agreement specifies the application of Texas law.

No. 12-20435

Both parties have clarified on appeal—despite the confusing and disjointed presentation of facts below—that American General is pursuing its breach of contract claim on the basis of the Agency Agreement. We therefore examine whether the fact that the Assignment was unsigned means that it was ineffective in discharging Bryan's liabilities under the Agency Agreement.

Here, too, appellate clarifications are dispositive. American General's brief—though it argues extensively that the Assignment was without legal effect—also concedes that "uncontroverted evidence submitted by American General" establishes that "the Assignment does not assign Mr. Bryan's commission for all purposes as alleged by Mr. Bryan, but instead assigned a specific agent code that American General provided to Mr. Bryan."[3] Though the parties continue to disagree as to the breadth of the Assignment, in light of the record evidence that the Assignment had some legal effect, we do not believe that summary judgment can be founded on a determination that the Assignment had no legal effect.

We need not resolve the remaining disagreement between American General and Bryan as to the breadth of the Assignment because we believe that the doctrine of quasi-estoppel, as American General argued in the summary judgment proceedings below, bars Bryan from asserting that he transferred all liabilities and responsibilities under the Agency Agreement to IMG Cap. Under Texas law, "[q]uasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). "The doctrine applies when it would be unconscionable to allow a person to maintain a position

---

[3] American General assigns its agents "agent codes" that are unique identifying numbers that an agent attaches to insurance applications submitted by that agent. The agent codes assist American General in processing commission payments. Agents can have multiple agent codes from American General.

inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Id.* Quasi-estoppel can, in some circumstances, bar parties from raising certain defenses in breach-of-contract actions, *see, e.g.*, *Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 176 S.W.3d 80, 87 (Tex. App.—Houston [1st Dist.] 2004, no pet.), and courts are allowed to look past the parol evidence rule in determining whether a party should be estopped, *id.* at 88.

All parties agree that the commission for the Altman Policies neither was sent to, nor ended up in, IMG Cap.'s bank account. The record evidence indicates that the commission was sent in Bryan's name to the address American General had for IMG Inc., was endorsed by IMG Inc., and was deposited in IMG Inc.'s bank account. American General presented evidence showing that Bryan, as IMG Inc.'s CEO, was the only individual authorized to withdraw funds from the IMG Inc. account into which the commission was deposited. Moreover, American General presented evidence indicating that, from October 2004 to June 2006, IMG Inc. endorsed and deposited 271 checks made payable to Bryan personally from a variety of insurers—including at least twenty from American General—into the IMG Inc. bank account. The total value of the checks to Bryan from all insurers exceeded 2.5 million dollars, and the value of checks from American General to Bryan alone was measurable in the hundreds of thousands of dollars.

Bryan's arguments against the invocation of quasi-estoppel are unavailing. Bryan first argues that he is not IMG Inc., and IMG Inc. receiving the commission check for the Altman Policies is not the same as Bryan receiving the commission check. Bryan points here to an affidavit from Bryan in the record that (i) denies knowledge of, or ever having received, the check, and (ii) indicates that the American General check was sent to IMG Inc. at the request of someone other than Bryan to an address provided to American General by someone other than Bryan. But Bryan has neither denied that he was the only person with

authority to withdraw funds, nor provided any rebuttal to the evidence regarding the extremely large sums that were payable to Bryan and handled in the same way as this check. Bryan's mere speculation that other individuals may have had access to the funds in the account, even when combined with his observation that cash withdrawals are not the only way money is moved out of business bank accounts, does not constitute controverting *evidence* about such other individuals or other ways "money is moved" from this account. At the summary judgment stage, the non-moving party "may not rest upon the mere allegations or denials of his pleading," but rather "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

Bryan finally argues that quasi-estoppel does not apply because Bryan has never previously taken a position that he had a contractual relationship with American General, or that the Agency Agreement had not been assigned to IMG Cap. Bryan's argument here neglects that Bryan is estopped not because of his arguments in litigation (judicial estoppel), but rather the acceptance and retention of funds that he received because of a relationship that he is now attempting to persuade the courts did not exist.

We conclude the summary judgment record proves that Bryan received the benefit of the commission on the Altman Policies, even if he did not physically receive the check that was deposited in IMG Inc.'s account. Given Bryan's acceptance of hundreds of thousands of dollars from American General, and the lack of any evidence in the record that Bryan made any effort to send the funds to IMG Cap.—the entity he now alleges should have received that money in the first place—we believe that it would be unconscionable to allow Bryan to hide behind the assignment to avoid liability on the Agency Agreement when his behavior over a multiple-year period was flagrantly inconsistent with the legal arguments he now urges us to adopt on appeal. The record is clear that Bryan

has continuously received the benefits from his relationship with American General; he can not now deny that that relationship exists.

Having concluded that Bryan is blocked by quasi-estoppel from asserting that he transferred all liabilities and responsibilities under the Agency Agreement to IMG Cap., we can affirm the grant of summary judgment on American General's breach of contract claim. The summary judgment record establishes that (1) Bryan entered into a valid contract with American General with the Agency Agreement, (2) the Assignment did not transfer away his liabilities and responsibilities under the Agency Agreement, and (3) he breached the Agency Agreement by failing to return the commissions after the policies were rescinded.

## CONCLUSION

We AFFIRM the district court's grant of summary judgment.