

NUMBER 13-13-00070-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

JIMMY VESTAL AND
STEVEN VESTAL,                                                    Appellants,

v.

LILIAN MURPHY,                                                    Appellee.

On appeal from the County Court at Law No. 2
of Johnson County, Texas.

MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Valdez

Appellee, Lillian Murphy, sued appellants, Jimmy Vestel and Steven Vestel, for

breach of contract and fraud.[1]  The trial court granted Murphy's motion for traditional

---

[1] This case is before the Court on transfer from the Tenth Court of Appeals in Waco, Texas pursuant to a docket equalization order issued by the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

summary judgment. By two issues, appellants contend that the trial court improperly failed to consider their response to appellee's motion for traditional summary judgment and that there are questions of fact regarding Murphy's breach of contract and fraud claims.[2] We affirm.

## I.    BACKGROUND

Murphy provided the trial court with, among other things, two documents. One document was signed by Jimmy on June 26, 2008 (the "first document") and another document was signed by both Jimmy and Steven on February 28, 2009 (the "second document"). Both documents show that Murphy had given "personal loans" of $61,000 to appellants' business, Regional Dozer Service (the "company") and that appellants had agreed to purchase Murphy's forty-eight percent share of the company for $70,000.[3] According to the documents, the total amount owed to Murphy was $133,124.43. The second document showed that as of February 28, 2009, appellants had paid Murphy $37,579.77 and still owed $95,544.66. The first document states that Murphy "will receive 10% of all revenue received by [the company]." The second document states "[Murphy] will receive automatic bank payments in the amount of $800.00 per week for the period of twelve weeks. At the end of twelve weeks the payment amount will be looked at and possibly adjusted according to how well the company is doing."

---

[2] Originally, this appeal was dismissed for want of jurisdiction on the basis that the trial court's summary judgment was not a final order because it did not address appellants' counterclaims against Murphy. However, on November 27, 2012, the parties signed an agreed order granting Murphy's motion for summary judgment on appellants' counterclaims. Thus, the trial court has disposed of all claims in this case.

[3] The documents further indicated that appellants owed Murphy $1,148 for "2.8% of 41,000.00" and $976.43 for "use of truck." Jimmy could not explain what was meant by the notation "2.8% of 41,000.00" and there is nothing in the record clarifying this notation.

At his deposition, Jimmy testified that he had agreed to purchase from Murphy her forty-eight percent share of the company for $70,000 and that the first document memorialized this "agreement" he made with Murphy. Jimmy agreed that Murphy had loaned the company $61,000 of her own money in order to "cover payroll" for the company. Jimmy stated that he considered the amount documented of $133,124.43 as "correct" when he signed it.

According to Jimmy, when he signed the first document, the company was making $18,000 to $20,000 per week in revenue; however, "[a]s the election grew near and things got slower and slower, [the parties] made new agreements to reduce the payments." Jimmy stated, "And it finally got down to like you pay me, I think it was like $9,000 in the next few months, and then we'll re-negotiate." Jimmy did not know how much the company paid Murphy because he "left that in other people's control . . . to take care of."

Jimmy testified that appellants later agreed to pay Murphy $800 per week for a period of twelve weeks. According to Jimmy, appellants did not make any payments to Murphy due to the company's failure. Jimmy stated that he agreed that appellants owed Murphy $95,544.66 as of February 28, 2009. Jimmy explained that the company was in a "slump" so there was no money to pay Murphy and that once the company began making money again, Murphy would be paid.

## II.  DISCUSSION

By their first issue, appellants contend that the trial court failed to consider their response to appellee's motion for traditional summary judgment. We conclude that this issue is without merit because the trial court indicated on the record that it had considered appellants' response before granting appellee a traditional summary judgment.

3

Specifically, the judge stated, "The Court will consider the pleadings of the Plaintiff and Respondent in this case in regards to a Motion for Summary Judgment filed by the plaintiff. The Court will also consider the statements of the attorneys of record made to the Court here today. Based upon the pleadings in the file, the arguments contained in the pleadings regarding summary judgment, the Court will grant the Plaintiff's Motion for Summary Judgment in this case in the amount of $92,553.69."[4] We overrule appellants' first issue.

By their second issue, appellants contend that the trial court erred in granting Murphy's motion for summary judgment because the evidence is insufficient as a matter of law to support it. Specifically, appellants argue that there was no evidence that they breached the contract and that they did not intend to not perform on the contract.

In a traditional motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a; *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If the movant's motion and summary judgment proof facially establishes a right to judgment as a matter of law, the burden shifts to the non-movant to raise a material fact issue sufficient to defeat summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.); *HBO, A Div. of Time Warner Entm't Co., L.P. v. Harrison*, 983 S.W.2d 31, 35 (Tex. App.—Houston [14th Dist.] 1998, no pet.). In deciding whether a disputed material fact issue precludes summary judgment, we resolve every reasonable

---

[4] There is nothing in the record to explain why the trial court granted a judgment of $92,553.66 when the promissory note indicated that the amount owed was $95,544.66. Appellants do not provide any argument concerning the amount awarded.

4

inference in favor of the non-movant and take all evidence favorable to it as true. *See Nixon*, 690 S.W.2d at 548–49; *Karl v. Oaks Minor Emergency Clinic*, 826 S.W.2d 791, 794 (Tex. App.—Houston [14th Dist.] 1992, writ denied). We review the granting of a traditional motion for summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

To be entitled to summary judgment based on her breach of contract claim, Murphy had to establish as a matter of law that (1) a valid contract existed, (2) she performed or tendered performance, (3) appellants breached the contract, and (4) she suffered damages as a result of the appellants' breach. *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Here, Jimmy testified at his deposition that appellants had agreed to pay Murphy $70,000 to purchase her forty-eight percent share of the company and that Murphy loaned them $61,000 that they agreed to repay to Murphy. Jimmy admitted that he had made payments to Murphy for the $133,124.43 debt and the summary judgment evidence showed that appellants had paid $37,579.77 toward lowering the debt. Jimmy also agreed that appellants still owed Murphy $95,544.66. Evidence was also presented that Murphy received "a 1997 Peterbuilt for the price of $11,500.00" that had been deducted from the total owed.[5] Thus, we conclude that Murphy met her burden of showing that: (1) an agreement existed for Murphy to sell her forty-eight percent share of the company to appellants for $70,000 and appellants borrowed $61,000 from Murphy and agreed to pay it back; (2) Murphy

---

[5] We note that on appeal, appellants do not dispute any of these facts.

5

performed; (3) appellants breached the agreement by failing to pay Murphy the amounts agreed; and (4) she suffered harm due to the breach. *See id.*

Appellants argue that the "terms" of the first document concerning payment of appellants' debt to Murphy provided "for a never-ending payment of '10% of all revenue' of" the company. Thus, appellants urge, fact questions exist regarding "What is the price? Although there is an amount that says, 'total', because there is no end-date for the 10% revenue payments, the amount that will be paid versus the amount is owed is certainly questionable."[6] We are not persuaded by appellants' argument because Jimmy admitted that appellants owed the amount of $95,544.66 to Murphy and that they have not paid Murphy according to the "terms" of either document. Thus, appellants have not met their burden of raising a question of fact regarding whether a breach occurred. Appellants also claim that there was no consideration for the second document, which appellants characterize as a "new contract" and states that "this agreement supersedes all other agreements." However, appellants have not provided a clear and concise argument with applicable authority to support their mere assertion that there is no consideration. Thus, we will not address it. *See* TEX. R. APP. P. 38.1(i).

We also conclude that we need not address appellants' argument regarding Murphy's fraud claim because we must affirm the summary judgment if any one of the movant's theories has merit and we have determined that Murphy's fraud claim has merit.

---

[6] The above-quoted statements are the extent of appellants' argument regarding the "terms" of the contract. Appellants do not provide any analysis with a clear and concise argument to support any theory of law that would require this Court to reverse the trial court's grant of summary judgment on the basis that the "terms" of the agreement were changed, unclear, or indefinite. *See* TEX. R. APP. P. 38.1(i); *Plummer v. Reeves*, 93 S.W.3d 930, 931 (Tex. App.—Amarillo 2003, pet. denied) (explaining that the appellate court is not required to make the appellant's argument for him because the court would be abandoning its role as a neutral adjudicator and would become an advocate for the appellant).

*Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex. 1995); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 343 (Tex. App.—Corpus Christi 2004, pet. denied).  We overrule appellants' second issue.

### III.  CONCLUSION

We affirm the trial court's summary judgment.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
6th day of February, 2014.

7